Stephen J. Joncus
Oregon Bar No. 013072
JONCUS LAW P.C.
13203 SE 172nd Ave Ste 166 #344
Happy Valley, Oregon 97086
Telephone: (971) 236-1200
Facsimile: (971) 244-7997
steve@joncus.net

*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **Marc Thielman**, **Senator Dennis Linthicum**, **Senator Kim Thatcher**, **Jeff Kropf**, **Mark Anderson**, **Chuck Wiese**, **Janice Dysinger**, **Steven McGuire**, **Rick Riley**, **Gabriel Buehler**, **Don Powers**, **Ben Edtl**, **John Small**, <br><br> Plaintiffs, <br><br> v. <br><br> **Tina Kotek**, in her official and personal capacities as Governor of Oregon; **LaVonne Griffin-Valade**, in her official and personal capacities as Oregon Secretary of State; **Molly Woon**, in her official and personal capacities as Elections Director, <br><br> Defendants. | Case No.: 3:23-cv-1639 <br><br><br> **AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND DAMAGES FOR VIOLATION OF FREE SPEECH** <br><br><br> **Demand for Jury Trial** |

Once a government is committed to the principle of silencing the voice of opposition, it has only one place to go, and that is down the path of increasingly repressive measures, until it becomes a source of terror to all of its citizens and creates a country where everyone lives in fear.[1]

It is a bedrock principle of our constitutional system that the government does not get to decide what speech is acceptable or true. Under the First Amendment, Americans have a right to speak freely regardless of whether their speech upsets the preferred narrative. In fact, that's when it needs the most vigorous protection.[2]

1. The State of Oregon does not like criticism of its election system. Unfortunately, the State of Oregon's response to criticism shows that it is "committed to the principle of silencing" its critics.[3] Oregon issued an RFP in August 2023 and has awarded the contract to a UK artificial intelligence surveillance company named Logically AI Inc. ("Logically AI"). The purpose of the contract is "identify and mitigate harmful information online as it relates to elections (mis-, dis-, and mal- information, or "MDM")."[4] Oregon is hiring Logically AI to detect, trace, and target those deemed to be spreading "misinformation, disinformation, and mal-information." This dystopian censorship project defines "misinformation, disinformation, and mal-information" as whatever information the government asserts is not true or misleading. The government

---

[1] President Harry S. Truman, *Special Message to the Congress on the Internal Security of the United States* (Aug. 8, 1950) (https://www.trumanlibrary.gov/library/public-papers/207/special-message-congress-internal-security-united-states) (viewed October 24, 2023).
[2] Hearing on the Weaponization of the Federal Government Before the Select Subcommittee on the Weaponization of the Federal Government of the Committee on the Judiciary, U.S. House of Reps., 118th Cong., No. 118-7 (March 9, 2023) (statement of Representative Mike Johnson, Louisiana).
[3] *See* Truman Message to Congress.
[4] Exhibit A.

has no proper role in deciding what speech is true or misleading. The government is prohibited from surveilling, tracking, and targeting those whose speech it does not like.

**PARTIES**

2. Marc Thielman is the former Superintendent of Alsea School District and was a candidate for the Republican nomination for Governor in 2022. Thielman is the lead plaintiff in *Thielman v. Fagan*, 3:22-cv-1516 (D. Or.) and lead appellant in the appeal of that case styled *Thielman v. Griffin-Valade*, 23-35452 (9th Cir.). Thielman lives in Linn County.

3. Senator Dennis Linthicum represents District 28 in the Oregon Senate. His district covers all or part of Klamath, Jackson, and Deschutes counties. Senator Linthicum is also a plaintiff and appellant in *Thielman v. Fagan*. Senator Linthicum resides in Klamath County.

4. Senator Kim Thatcher represents District 11 in the Oregon Senate. Her district covers the western portion of Marion County. Senator Thatcher resides in Marion County.

5. Jeff Kropf is a radio talk show host, former State Representative for District 17, and resident of Linn County.

6. Mark Anderson is a writer, editor, and radio talk show host of The I Spy Radio Show and resident of Polk County, Oregon. In his professional capacity as an editor for more than 20 years, he can attest that a veiled or implied threat, such as that

posed by the State's MDM program, will curtail and harm the creative process of writing and expressing oneself, and will alter the final product.

7. Chuck Wiese is a retired meteorologist and retired airline pilot. Wiese is also a plaintiff and appellant in *Thielman v. Fagan*. Wiese lives in Washington County.

8. Janice Dysinger is a long-time election integrity advocate who resides in Multnomah County. Dysinger is co-chair of the Election Integrity Committee of the Oregon Republican Party.

9. Steven McGuire is a retired businessman living in Washington County.

10. Rick Riley is the Chair of the Clackamas County Republican Party. On November 7, 2023, Riley sent the Oregon Secretary of State a letter demanding that she rescind the contract with Logically AI and resign from her position for her breach of the citizen's trust.

11. Gabriel Buehler is the Chair of the Washington County Republican Party and resides in Washington County.

12. Don Powers is a businessman and co-chair of the Election Integrity Committee of the Oregon Republican Party. Powers is a plaintiff and appellant in *Thielman v. Fagan*. Powers resides in Clackamas County.

13. Ben Edtl is the founder of Free Oregon, a non-partisan public interest organization dedicated to defending and restoring civil rights in Oregon. Edtl was a Republican Candidate for State Senate District 19 which includes portions of Clackamas,

Multnomah, and Washington Counties. Edtl is a plaintiff and appellant in *Thielman v. Fagan*. Edtl lives in Washington County.

14. John Small is a school teacher at Hazelbrook Middle School in the Tigard-Tualatin School District. In order to protect his job, Small now feels forced to curtail the expression of his opinions about Oregon's elections as a result of learning about Oregon's surveillance program.

15. Defendant Tina Kotek is the Governor of Oregon. Kotek is sued in her official and personal capacities.

16. Defendant LaVonne Griffin-Valade is the Oregon Secretary of State. Griffin-Valade is sued in her official and personal capacities as Oregon Secretary of State.

17. Defendant Molly Woon is the Oregon Elections Director. Woon is sued in her official and personal capacities as Oregon Secretary of State.

## **JURISDICTION**

18. Plaintiffs bring this action under 42 U.S.C. § 1983 to challenge government officers' violations of the United States Constitution. Plaintiffs seek damages and injunctive relief.

19. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action seeks to protect civil rights under the First Amendment which applies to Oregon through Fourteenth Amendment to the United States Constitution.

20. This Court has personal jurisdiction over each Defendant because each Defendant is located in the State of Oregon.

## CAUSES OF ACTION

### CLAIM 1

**VIOLATION OF FREEDOM OF SPEECH UNDER 1ST AMENDMENT TO THE UNITED STATES CONSTITUTION**

**(42 U.S.C. § 1983)**

21. Plaintiffs incorporate and reallege all paragraphs in the Complaint.

22. On September 21, 2023, bidding on Bid Solicitation S-165000-00007470 ("RFP 7470") opened. The organization offering RFP 7470 was the Oregon Secretary of State, Elections Department. The title of RFP 7470 was "Elections False Information Solution." The high-level description of RFP 7470 is "The Oregon Elections Division is seeking a solution to address the spread of mis-, dis-, and mal-information."

23. On information and belief, RFP 7470 was initiated by Woon and approved by the Secretary of State and the Governor. The contract has been awarded to Logically AI.

24. The overview of RFP 7470 ironically states: "The Oregon Secretary of State is one of three constitutional offices created at statehood. As an independent constitutional officer, the ***Secretary of State answers directly and solely to the people of Oregon***." (emphasis added.) Through this very contract, the Secretary of State is violating her obligation to the people of Oregon with her plan to surveil and combat the free speech of Oregonians.

25. The purpose of RFP 7470 states:

The purpose of this RFP is to contract with a vendor to help provide a suite of products to identify and *mitigate* harmful information online as it relates to elections (mis-, dis-, and mal- information, or "MDM"). (emphasis added).

26. RFP 7470 includes the following descriptions:

**Misinformation** is false, but not created or shared with the intention of causing harm.

**Disinformation** is deliberately created to mislead, harm, or manipulate a person, social group, organization, or country.

**Malinformation** is based on fact, but used out of context to mislead, harm, or manipulate.

27. Contrary to the RFP, there has not been a rise in misinformation, disinformation, or mal-information. That assertion is a complete fabrication by the State of Oregon. The assertion of a rise in disinformation is itself disinformation created by Oregon to shut down public debate. Indeed, labeling public discourse as misinformation, disinformation, or mal-information is an Orwellian tactic to propagandize the public. The MDM rubric is a model designed to enforce unpopular policies and avoid public debate. The MDM rubric is designed to turn ordinary debate into a thought crime.

28. Oregon's MDM surveillance includes the detection and report of accurate facts. The very definition of "mal-information" admits that this category of information is factually accurate. However, if the accurate facts are not spun in a way favored by the Secretary of State, it is a harmful thought crime that needs to be mitigated by the State.

29. This censorship project places unelected government officials and an out-of-country artificial intelligence censorship company as the arbiters of each of these

AMENDED COMPLAINT 7

judgments (e.g., whether a statement is true or false, whether a statement is deliberately created to manipulate, whether a statement causes harm, whether a statement is used out of context).

30. The "harm" mentioned in these definitions is harm to the Secretary of State's narrative about its purported safe and secure election system. Since the Secretary of State proclaims that she reports "solely to the people of Oregon," a project to protect *her narrative* from its own citizen's right to free speech is a violation of the public trust.

31. In the scope of work, RFP 7470 states:

> The Elections Division is seeking . . . a suite of products to identify, advise, and **methods to combat** harmful MDM information online. This includes:
>
> - media monitoring and **threat detection** services to offer a comprehensive view of the landscape;
>
> - Providing **early notification systems** to identify MDM and **target MDM activity**; and
>
> - Guidance on effective measures to ensure the most effective possible promotion of accurate information.[5]

32. The RFP further provides:

> The Elections Division is seeking a vendor to help provide a suite of products to identify and **disarm** harmful, MDM information online. The Elections Division is seeking media monitoring and threat detection services to offer a comprehensive view of the media landscape, early warning systems to **identify** MDM and **target** MDM activity and allow access to effective **countermeasures**.[6]

---

[5] Exhibit A p. 7 (emphasis added.)
[6] Exhibit B p. 1.

33. In an MDM Solution Pre-Proposal Conference, Nikki Fisher, an Elections Division taxpayer-funded employee, gave a chilling description of what the Elections Division was planning. She said that the Elections Division was looking for an early warning system to identify MDM and identification of effective countermeasures. Fisher further states the Elections Division's plan to share information with the relevant partners such as the FBI, Oregon State Police, National Guard, Oregon TITAN Fusion Center (a crimes clearing house aimed at terrorist activity), National Guard, CISA, and the US Attorneys' Office.

34. RFP 7470 refers to Plaintiffs' fundamental right to free speech with war-like rhetoric and a bunker mentality. Thus, not only are Oregon taxpayers being forced to fund this surveillance and censorship project without their consent, they are being characterized as war-time enemies for exercising their fundamental right to free speech.

35. The Secretary of State's purported effort to promote accurate information is simply false. The Secretary of State can speak and explain all she wants. There is no obstacle to the Secretary of State speaking the truth. The Secretary of State does not need surveillance of the public to promote accurate information. The two are not related. The Secretary of State is in full possession of 100% accurate information. Surveilling public speech does nothing to add to the accurate information already possessed by the Secretary of State. Rather, the purpose of the Secretary of State's RFP, by its very terms, is to intimidate and silence criticism from the public.

36. The public has been flooded with false information by the government in recent years. We were told the lie that the Hunter Biden laptop was Russian disinformation when the government knew that the information on the laptop was authentic. We were told the lie that President Trump conspired with Russia to win the 2016 election. The list goes on and on.

37. As exposed in *Missouri v. Biden*, the federal government has become the Ministry of Truth employing a far-reaching and widespread censorship campaign to silence the truth.[7] The rubric now employed by the federal government to coverup government lies is to label true information as mis-, dis-, and mal-information. In other words, purported government concern about MDM is now a red-flag for a "coordinated campaign"[8] by government to coverup its lies. Oregon has adopted the exact same MDM rubric for surveillance of Oregonians.

38. The 2023 RFP was preceded by a 2022 RFP that was also awarded to Logically AI. According to Logically AI, it began generating surveillance reports in August 2022. Logically AI's reports show that it is not focused on facts; rather Logically AI's reports look for and describe "narratives" that are contrary to the Secretary of State's narrative. Logically AI's reports are focused solely on narratives. Narratives are not facts, they are not information, they are stories that express opinions.

---

[7] *Missouri v. Biden*, 2023 U.S. Dist. LEXIS 114585 at *209, 2023 WL 5841935 (W.D. La. July 4, 2023), *modified*, 83 F.3d 350 (5th Cir. 2023), *cert. granted sub nom*, *Murthy v. Missouri*, 144 S. Ct. 7 (2023).
[8] *Missouri v. Biden*, 83 F.4th 350, 392 (5th Cir. 2023), *cert. granted sub nom*, *Murthy v. Missouri*, 144 S. Ct. 7 (2023).

39. Contrary to the purported goal of identifying facts that are not true, Logically AI uses perjorative terms to refer to people. In a report dated September 2, 2022, Logically AI reported: "A prominent *election denier* spoke at the Mike Lindell-sponsored Moment of Truth Summit on the weekend of August 20, 2022. She repeated multiple claims about election fraud in Oregon that Logically has already reported on and told listeners to watch for the results of a trial on September 20, 2022 over the disputed release of elections records in Washington County, Oregon." (emphasis added.) Logically AI was referring to Plaintiff Janice Dysinger. Labeling a person an election denier is a common smear tactic of propagandists and an indication that the contract and these reports are partisan in nature.

40. Logically AI's purported mis-, dis-, or mal- information reports really consist of political opposition research for the Democrats who control Oregon government. Oregon Democrats are using State funds for their political opposition research.

41. The Secretary of State's office admits that it has attempted to get social media companies to censor people whose speech that it does not like. By hiring Logically AI, the Secretary of State has improved its leverage to suppress free speech. Logically AI boasts that its "countermeasures program enables the opportunity for unlimited takedown attempts." Logically AI further boasts that it "is already a trusted entity within the social media community and has a preferred status" to make it effective in taking down the

social media accounts of those who express views inconsistent with the Secretary of State's narrative.

42. Plaintiffs are each educated, deeply researched, vocal critics of Oregon's election system. Several plaintiffs are also plaintiffs in *Thielman v. Fagan*, challenging the constitutionality of Oregon's election system, now on appeal. Senators Linthicum and Thatcher represent citizens who would be targeted by this censorship project. Kropf and Anderson are professional communicators of free speech. RFP 7470 specifically targets radio and podcasts such as those broadcast by Kropf and Anderson.[9] Riley and Buehler are political party leaders. Dysinger and Powers are leaders in their political party's election integrity efforts. Due to their prominence, Plaintiffs will each be targeted for exercising their First Amendment right to free speech by Defendants with their new artificial intelligence platform.

43. Plaintiff Janice Dysinger has prior experience with Oregon's antagonism towards criticism of its election system. Former Oregon Elections Director, Deborah Scroggin, once telephoned Dysinger ordering her not to speak about elections in public anymore. It is hard to imagine the mindset of a government employee telling a citizen that they do not have the right to speak. Having not been successful in silencing Dysinger with a phone call, Oregon now endeavors to employ artificial intelligence tools to "target," "combat," and "disarm" Dysinger, Plaintiffs, and other critics with "countermeasures."

---

[9] Exhibit 2 p. 2.

44. People are, in general, naturally aware of their audience and tailor their speech accordingly. People are multifaceted beings; while speaking, or planning to speak, people imagine the nature of the audience and how it will react to the message. It is human nature for people to automatically mitigate and calibrate their communication based on who they know is in the audience, expectations, and social rules. When people know that the government is watching they alter their behavior accordingly. Particularly when people know that they might be targeted by the government, most people will naturally avoid saying things that will trigger attention from the government.

45. This well-known behavior of people explains why drivers on a highway slow down when they see a police officer monitoring their speed. It's why officers park empty police cars on the side of the road at the Portland Airport. It's why the government puts up signs telling drivers that their speed may be monitored by radar or aircraft. The government wants drivers to know that they are being watched because the reaction of people to being watched is to change their behavior.

46. Unlike exceeding the speed limit, speaking one's views on concerning public affairs is not illegal. Indeed, speech concerning public affairs is more than self-expression; it is the essence of self-government.[10] But the same principle applies; people who know they are being watched will change their behavior.

47. Oregon's plan to intimidate speech concerning elections has teeth. In 2021, HB 2323 was passed which provided a new $10,000 fine for communication of false

---

[10] *McKinley v. Eloy*, 705 F.2d 1110, 1113 (9th Cir. 1983).

statements of material fact intended to mislead electors on a variety of election topics.[11] Many Oregonians with knowledge of Oregon's MDM surveillance system will curtail their speech to avoid being targeted. Due to Oregon's MDM surveillance system, Plaintiff John Small now limits his speech on election issues in order to protect his job.

48. Plaintiffs incorporate by reference the declarations of Senator Dennis Linthicum, Rick Riley, Chuck Weiss, Don Powers, Jeff Kropf, Janice Dysinger, Marc Thielman, Mark Anderson, Senator Kim Thatcher, Steven McGuire, Ben Edtl, and Gabriel Buehler.[12]

49. Defendants' actions also serve to interfere with the upcoming elections. Candidates who speak about election issues can be "targeted" and "disarmed." Suppression of free speech will prevent the wider public from hearing contrary points of view thereby skewing their opinions and their votes. The express intent of the Oregon Secretary of State is to target, combat, disarm the free speech of its critics with countermeasures which include the possibility of referring a Plaintiff to law enforcement authorities.

50. It is Oregon's sacred duty to protect the right of free speech and that includes, especially, speech with which the State disagrees and is critical of the State. The State is prohibited from stigmatizing those with whom it disagrees with a "yellow star" of "disinformation."

---

[11] *See* ORS § 260.537.
[12] Dkt. Nos. 7 - 18.

51. At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration, and adherence.

52. It is the purpose of the Free Speech Clause of the First Amendment to preserve an uninhibited marketplace of ideas from which the truth will ultimately prevail. Truth is obtained thorough the free exchange of ideas—not by the suppression of ideas that are contrary to the government narrative. Freedom of speech is an indispensable condition of nearly every other form of freedom.

53. Plaintiffs' speech may not be surveilled, targeted, or suppressed by government—not in the United States of America. Plaintiffs have the right to speak and listen freely without government interference. Oregon is not permitted to interfere whatsoever in Plaintiffs' speech. Oregon's MDM surveillance program will chill or silence a person of ordinary firmness from freely expressing his views on Oregon elections.

## CLAIM 2

### ILLEGAL ULTRA VIRES ACT

54. Plaintiffs incorporate and reallege all paragraphs in the Complaint.

55. The Secretary of State has only those powers given it by the Oregon Legislative Assembly.[13]

---

[13] *SAIF Corp. v. Shipley*, 326 Or 557, 561 (1998) ("an agency has only those powers that the legislature grants and cannot exercise authority that it does not have.").

56. Under ORS 246.110, the Secretary of State responsibility is to "maintain uniformity in the application, operation and interpretation of election laws." Nowhere does the Secretary of State have the power to surveil Oregonians speech. Nowhere does the Secretary of State have the authority to collect and maintain information the political views or activities of any individual. Nowhere does the Secretary of State have authority for law enforcement. The Secretary of State is not a law enforcement agency.

57. For those Oregon entities that are law enforcement agencies, the Legislature has expressly prohibited them from collecting and maintaining the kind of information that the Secretary of State is acquiring and maintaining through its contract with Logically AI.

> No law enforcement agency, as defined in ORS 181A.010, may collect or maintain information about the political, religious or social views, associations or activities of any individual, group, association, organization, corporation, business or partnership unless such information directly relates to an investigation of criminal activities, and there are reasonable grounds to suspect the subject of the information is or may be involved in criminal conduct.[14]

58. The information that the Secretary of State is collecting and maintaining through its contracts with Logically AI are exactly the type of information that is prohibited under ORS 181A.250.

59. Oregon cannot circumvent the prohibitions of ORS 181A.250 by employing the Secretary of State to perform function that is prohibited for an Oregon law enforcement agency.

---

[14] ORS 181A.250.

## DEMAND FOR JURY TRIAL

60.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs respectfully demand a jury trial of all issues triable to a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.      A declaration that Oregon is violating Oregonians' free speech rights;

B.      A preliminary and permanent injunction against Defendants;

C.      A judgment of damages against Defendants;

D.      A judgment of punitive damages against Defendants;

E.      Attorney's fees pursuant to 42 U.S.C. § 1983; and

F.      Such other and further relief that the Court deems just.

Respectfully submitted,

Dated:  January 26, 2024      By:    s/ *Stephen J. Joncus*
Stephen J. Joncus, OSB No. 013072
JONCUS LAW P.C.
13203 SE 172nd Ave Ste 166 #344
Happy Valley, Oregon 97086
Telephone: (971) 236-1200
Facsimile: (971) 244-7997
steve@joncus.net

*Attorney for Plaintiffs*